[Nos. 16936, 16937.  *En Banc.*  January 26, 1922.]

THE STATE OF WASHINGTON, *on the Relation of
Kennewick Irrigation District, Plaintiff,*
v. THE SUPERIOR COURT FOR WALLA
WALLA COUNTY, *E. C. Mills,
Judge, Respondent.*

THE STATE OF WASHINGTON, *on the Relation of Pacific
Power & Light Company et al., Plaintiff,* v.
THE SUPERIOR COURT FOR WALLA WALLA
COUNTY, *E. C. Mills, Judge,
Respondent.*[1]

EMINENT DOMAIN (21, 39)—PUBLIC USE—CONFLICTING CLAIMS—
PRIORITIES—PUBLIC NECESSITY—EVIDENCE — SUFFICIENCY.  The court
may determine that the use of the waters of a river by an irriga-
tion company for irrigating a large quantity of arid land, and for
the development of power necessary to its irrigation scheme, is
superior to the use of such waters by a city for merely power pur-
poses in the distribution of water to its inhabitants apart from
domestic and city purposes, there being no showing by the city of
a necessity for the use of the river waters for domestic purposes,
in view of the rule prescribed by Laws 1917, p. 448, § 4, that "in
condemnation proceedings the court shall determine what use will
be for the greatest public benefit, and that use shall be deemed a
superior one;" especially where the irrigation use was prior in
time.

SAME (111)—PROCEEDINGS — PARTIES — RIGHTS OF INTERVENERS.
Where condemnation proceedings are instituted by an irrigation
district against a power company for the purpose of establishing a
superior use in the waters of a certain river, a city has no right
to intervene therein for the purpose of securing an adjudication
upon the city's right to condemn, as against the power company,
property other than that involved in the proceeding by the irriga-
tion company.

Certiorari to review a judgment of the superior
court for Walla Walla county, Mills, J., entered No-
vember 16, 1921, adjudging a public use and necessity

[1]Reported in 204 Pac. 1.

in condemnation proceedings, after a hearing before the court. Reversed.

*Moulton & Jeffrey* and *W. V. Tanner,* for relator Kennewick Irrigation District.

*Sharpstein, Smith & Sharpstein, John A. Laing,* and *Henry S. Gray,* for relator Pacific Power & Light Company *et al.*

*Bruce E. McGregor* and *Grady, Shumate & Velikanje,* for respondent.

PARKER, C. J.—These two certiorari proceedings were commenced in this court, looking to the review of an adjudication of public use and necessity rendered by the superior court for Walla Walla county in an eminent domain proceeding in which the relator irrigation district seeks to acquire certain water and property rights, in which proceeding the city of Prosser has intervened and seeks to acquire a portion of the same water and property rights, and other property, claiming in that behalf a condemnation right superior to that of the irrigation district. The eminent domain proceeding was duly transferred to the superior court for Walla Walla county for the purpose of a hearing and trial. The adjudication made by the superior court is in favor of the irrigation district as against all the defendants in the proceeding, but is in favor of the intervener city as against the irrigation district and all other parties to the proceeding, in so far as it awards to the city the condemnation right of acquiring one hundred second feet of the water.

The irrigation district was granted a writ of certiorari to bring the record of the eminent domain proceeding to this court, to the end that the adjudication of public use and necessity, in so far as it is against the irrigation district, be reviewed and corrected if

found to have been erroneously so made. On the same day, the relator Pacific Power & Light Company was granted a writ of certiorari to bring the record of the eminent domain proceeding to this court, to the end that the adjudication of public use and necessity, in so far as it is against that company and in favor of the city, be reviewed and corrected if found to have been erroneously so made. In view of the fact that the adjudication was made by the superior court in one order and judgment as the result of one hearing of all the parties to the eminent domain proceeding, including the city as intervener, and separate returns to the writs would necessarily be the same, it was ordered that the superior court make but one return in response to both writs, which has been accordingly done. Upon the record so brought to this court, the respective claimed rights of all parties drawn in question by the writs have been here argued and submitted as one cause.

The Kennewick Irrigation District, contemplating the irrigation of several thousand acres of land in Benton county, commenced this eminent domain proceeding in the superior court for that county by filing its petition therein on February 23, 1921, thereafter filing an amended petition, seeking to acquire the dam constructed across the Yakima river at the city of Prosser; all of the waters of the Yakima river, not already owned by it, flowing to and impounded by the dam; the right to divert all of such waters from the river at a point just above the dam; certain rights of way along which to convey the diverted water to a power plant to be constructed as a part of the irrigation system and to the land to be irrigated; and the right to take and damage certain other property. While there are numerous defendants whose property

is so sought to be so taken or damaged, we may, for present purposes, ignore all defendants save the Pacific Power & Light Company, the principal owner of the waters sought to be so acquired by the irrigation district; since none of the other defendants now challenge the right of either the district or the city to acquire the water and property rights sought by them.

The right of the irrigation district to acquire the water and property rights it seeks is not challenged by the Pacific Power & Light Company; but that company does challenge the right of the city to acquire by its intervention in the eminent domain proceeding the water rights and property it seeks, upon the ground of want of proper preliminary jurisdictional steps to be taken by the city authorizing it to exercise its eminent domain right in that behalf. The irrigation district challenges the right of the city to exercise its eminent domain right upon the same ground, and also upon the ground that the contemplated public use of the water and property by it sought to be acquired is superior to that contemplated by the city. We shall proceed for the present upon the assumption that the city has taken the preliminary jurisdictional steps enabling it to exercise its right of eminent domain, in so far as it seeks to acquire water and property rights which are also sought to be acquired by the irrigation district, and that it was proper for the trial court to permit the city to file its intervention petition in the eminent domain proceeding in that behalf. In view of our conclusion, under the facts and circumstances here shown, that the irrigation district's right of condemnation as to all the water and property rights it seeks to acquire is superior to that of the city because of the greater necessities of the irrigation district and the greater public benefit which will result therefrom, we

shall here note principally the facts touching the respective contemplated uses of the water sought to be made by the irrigation district and the city, and as we proceed we think it will become apparent that our decision upon this question of superior public benefit and use will be decisive of the merits of this whole controversy, in so far as we are here called upon to decide it.

The irrigation district was duly organized as a public corporation under the laws of this state, looking to the reclaiming by irrigation of several thousands of acres of arid land lying in the lower Yakima valley, by taking and diverting 1,100 second feet of the water of the Yakima river, being practically all of the water of the river during the months of July and August of each year, when the water is at its lowest stage, from a point just above the dam at the city of Prosser. The record is not at all satisfactory in showing the number of acres proposed to be, and which will be, so reclaimed by the construction of the proposed irrigation project; but it seems certain that, in any event, the number of acres runs into the many thousands, and will, according to the proposed use of the water by the irrigation district, render necessary the taking of all of the water from the river as contemplated during its lowest stage in the months of July and August of each year, leaving none for the use of the city during those months. The entire flow of the river to the dam during those months is approximately only 1,100 second feet. Of this the irrigation district already owns 480 second feet, with the right to divert it from the river at a point above the dam. The irrigation district proposes to carry all this water from the diversion point above the dam through a canal a distance of some ten miles down the river to a point at a considerable height above the

river, and under or below that point construct a water power pumping plant to be operated by power generated by the dropping of approximately 600 second feet of the water into such pumping plant; and by such power raising the balance of the water to higher levels, so that it may then by gravity serve the land to be irrigated. Six hundred second feet of the water will thus be there returned to the river to flow on in its natural course to satisfy the requirements of other irrigation districts below, already established and in operation. This proposed irrigation system has been worked out in detail and recommended to the district by the United States Government Reclamation Service as a practical and efficient irrigation system effectual to reclaim and irrigate the several thousands of acres of land in question, and as being the most economical and efficient use of the waters of the Yakima river at and below Prosser for irrigation. There is no other practical or efficient way to serve the lands so proposed to be reclaimed and irrigated, and it will require all of the 1,100 second feet of water to accomplish that end.

It is argued in behalf of the city that, by the irrigation district's abandoning or being deprived of the right to use one hundred second feet of the water for power to raise water to serve some 3,600 acres of the land, the remainder of the proposed irrigation project could proceed unhampered. We think, however, the evidence calls for the conclusion, as contended by counsel for the irrigation district, that to so limit the irrigation district's right of condemnation would so materially impair the efficiency of its project as to call for an abandonment of the whole of it. This, we think, results from the unified and more or less dependent nature of the several parts of the project, one upon the other.

The city of Prosser seeks by its intervention in the condemnation proceeding, and was awarded by the adjudication therein, the right to acquire one hundred second feet of the waters of the river flowing to the dam, which hundred second feet we may for present purposes regard as being owned by the Pacific Power & Light Company, to the end that it [the city] may, by dropping that quantity of water just below the dam, generate power in a pumping plant, to be there constructed by it, for the purpose of pumping water from the city's source of water supply, consisting of wells within the city, for domestic and city use.   There are some allegations in the city's intervention petition which may seem to suggest that the city is seeking to acquire this one hundred second feet of water from the river directly for domestic and city purposes as well as for power, as above noticed; but it is plain from the record that such is not the purpose of the city in seeking to exercise its eminent domain right in this condemnation proceeding.  Its purpose is only to acquire power for the pumping of water from a source of supply, already in existence, entirely apart from the waters of the river, which source of supply, so far as quantity and quality are concerned, is already ample to satisfy both the present and probable future needs of the city, aside from the question of power.  The city is now, and has been for some considerable time, purchasing ample electric power for pumping purposes; and we think the record fails to show but what the city will be able in the future, to the full extent of its necessities, to obtain such electric power, or other power, for such purpose.  Nor does the record show but what such power may be acquired by the city in the future as economically and efficiently as it could furnish its own pumping power from the

water and power plant it seeks to acquire through its intervention in this condemnation proceeding.

We have, then, for comparison of these two conflicting eminent domain claims of the irrigation district and the city, for the purpose of determining which would redound to the greater benefit of the public, these considerations: (1) Both the irrigation district and the city, we may for present purposes assume, are seeking the hundred second feet of water for power purposes only; the former to aid and make efficient its pumping plant to raise water for irrigation purposes; and the latter to generate power in its proposed pumping plant to raise and make available water from its wells, wholly apart from the river, for domestic and city purposes; (2) the greater necessity, as we think, on the part of the irrigation district to make its irrigation project and the operation thereof efficient and effectual; (3) the reclamation and the bringing to a high state of productiveness, by the irrigation project, of many thousands of acres of otherwise practically worthless arid land; (4) and the fact that the irrigation district first sought condemnation of the water and property rights in question.

It may be that, speaking generally, the use of water for usual city and domestic purposes is a public use of a character superior to the use of water for irrigation; and that, were we to put aside the fact of the acquisition of the use of this water for power only, and the comparative necessities of the irrigation district and the city, we might feel required to hold that the disposition of the question of public use and necessity was properly disposed of by the trial court in favor of the city. But our problem is not so narrowly conditioned. Having in view what seems to us the greater necessity of the irrigation district, the greater public

benefit to result from the completion and putting in operation of its project, and the fact that the city will manifestly go on practically undisturbed in the furnishing of itself and its citizens with water, even though it be compelled to look elsewhere for pumping power than to its present source in that behalf, we cannot escape the conclusion that the public use to which the irrigation district proposes to devote all of the water and property it seeks is superior to that of the city, in that the public will reap a greater benefit from the proposed use by the irrigation district than it would from the proposed use by the city.

There seems but little room for controversy touching the law that should govern our disposition of this question. In § 4 of our water code (Laws of 1917, p. 448), we read:

"In condemnation proceedings the court shall determine what use will be for the greatest public benefit, and that use shall be deemed a superior one:  .  .  ."

This, seemingly, is the first time in this state that conflicting claims to the exercise of the right of eminent domain have arisen in a condemnation case, wherein two parties to the proceeding are for the first time asserting their conflicting eminent domain claims. We apprehend, however, that the rule would not be in principle materially different from that which obtains when one public service corporation is seeking to acquire by condemnation the property of another public service corporation already devoted to a public use. Since the irrigation district was plainly prior in point of time in the beginning of its condemnation proceeding, and because of the fact alone has at least the presumptive superior right in its favor (*Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670; *State ex rel. Cascade Public Service Corp. v.*

*Superior Court,* 53 Wash. 321, 101 Pac. 1094; *Chehalis v. Centralia,* 77 Wash. 673, 138 Pac. 293), it would seem that the city is in but little better position, if any, than it would be if it were seeking to condemn this hundred second feet of water had the irrigation district already acquired such water; though it is probable, in such a case, that the city would have a somewhat greater burden of proof of superior use. The rule measuring the degree of necessity of a condemnor, as against another public service corporation, seems to be stated in keeping with the views of this court in its quotation from Lewis, Eminent Domain (2d ed.), § 276, in *State ex rel. Skamania Boom Co. v. Superior Court,* 47 Wash. 166, 91 Pac. 637, as follows:

" 'But we should say that there was a reasonable necessity for the taking where the public interests would be better subserved thereby, or where the advantages to the condemnor will largely exceed the disadvantages to the condemnee.' "

The following decisions of this court are in harmony with this view: *State ex rel. Washington Boom Co. v. Chehalis Boom Co.,* 82 Wash. 509, 144 Pac. 719; *State ex rel. Union Trust & Savings Bank v. Superior Court,* 84 Wash. 20, 145 Pac. 999, 149 Pac. 324; *State ex rel. South Fork Log Driving Co. v. Superior Court,* 102 Wash. 460, 173 Pac. 192.

Applying the rule of our water code, above quoted, and the law as announced in these decisions, we reach the conclusion that the judgment of the trial court should be reversed, in so far as it denies to the irrigation district the right of acquisition, through this condemnation proceeding, of the water rights and property it seeks and awards to the city the condemnation rights it seeks.

There seems to be an attempt by the city, by its intervention, to acquire, as against the Pacific Power &

Light Company, certain property other than that which is sought to be acquired by the irrigation district. Whether or not the city desires to continue its efforts in that behalf in this condemnation proceeding is not made plain by this record. We are of the opinion, however, that such an effort on the part of the city, by intervention in this condemnation proceeding, is not a proper procedure; and that the city's intervention should be dismissed, in so far as it seeks acquisition of such other property, but without prejudice to the city's right to commence and prosecute such condemnation proceedings as it sees fit, looking to the acquisition of property rights other than those sought in this condemnation proceeding to be acquired by the irrigation district.

The cause is remanded to the superior court with directions to render an adjudication of public use and necessity as prayed for by the irrigation district, and to dismiss the city's intervention petition.

All concur.