## THE STATE v. CHARLES REBASTI, Appellant.

### In Banc, December 30, 1924.

1. **ROBBERY: Sufficient Evidence.** Where the evidence clearly establishes that a bank messenger, carrying $9,500, was suddenly struck over the head, a gun placed at his stomach and the money taken from him, and four witnesses identify defendant as the robber and as the man who committed the assault, the evidence is sufficient, aside from that obtained by a search of defendant's safety-deposit box and the seizure of money found therein, to sustain a verdict of guilty.

2. **SEARCH AND SEIZURE: After Arrest: Evidence.** After defendant's lawful arrest for robbery, the officers have a right to search him and his possessions in the room where he was arrested and take from him any article which may be used in securing his conviction, and the evidence thus obtained may be used in any way that will lead to his conviction.

3. ————: **By Federal Officer: Aided by State Officer.** A search of the safety-deposit box of defendant, charged with robbery in a State

State v. Rebasti.

court, by Federal officers, under a warrant issued by a United States commissioner, being done solely under the authority of Federal agents, although a State officer is present, but does not conduct the examination or participate in it, does not contravene Sections 11 and 23 of Article II of the Missouri Constitution, which protects only against unreasonable search by State officers and State agents. Nor does the fact that the State officer gave to the Federal officer the information upon which the warrant was based affect the legality of the search by the Federal officers, where they had a right to proceed to make the search for a violation of Federal law.

4. ———: U. S. Constitution: Protection of Guaranteed Rights by State Courts. State courts are under obligation to protect the rights guaranteed to an accused by the Constitution of the United States, and are bound to follow the rulings of the Federal court in respect to its guaranties against unreasonable search and seizure. [DAVID E. BLAIR, J., dissenting.]

5. ———: Unauthorized Warrant. A warrant stating that complaint, on affidavit, was made before a United States commissioner by Bert S. Gregory, U. S. Internal Revenue officer, that he had reason to believe that fraud is being committed upon the revenue laws of the United States by the use of Safety Iron Deposit Box 1832, in a certain bank, "said safety-deposit box being now rented, used and controlled by Charles Rebasti for the unlawful sale and concealment of narcotic drugs," there being no allegation that any narcotic drugs of any kind were in the safety-deposit box, nor of any other fact that would justify a search, was in violation of the Fourth Amendment of the U. S. Constitution and void, and the search made thereunder by Federal officers was illegal, and the evidence of the Federal officers obtained by such search is incompetent in the trial of Rebasti in the State court, and upon a timely motion should be suppressed.

Held, by DAVID E. BLAIR, J., dissenting, that evidence discovered by a Federal officer through means of a warrant unlawful under the Federal Constitution, is not incompetent in a State court.

6. ———: Protection of Rights Guaranteed by U. S. Constitution: By State Court. Because a case arises in a State court, and not in a Federal court, is no reason for a contention that the State court cannot take notice of the restrictions of the Fourth and Fifth amendments of the U. -S. Constitution. The State court is not powerless to protect rights guaranteed to its citizens by the Federal Constitution. The State court has power to say that evidence obtained by Federal officers, through the means of an illegal and void search warrant issued by a United States commissioner, in

306 Mo.—22

violation of said amendments, is incompetent, when such evidence is attempted to be used to convict a defendant in a State court, and to say that such evidence, upon timely motion, should be suppressed. The lawfulness or unlawfulness of an act of an officer or any other individual depends upon the character of the act, and not upon the court in which the act is called in question.

*Held*, by DAVID E. BLAIR, J., dissenting, that a violation of the Fourth and Fifth amendments of the Constitution of the United States by Federal officers cannot avail a defendant charged with a violation of the laws of this State when brought to trial in the courts of this State. Those amendments are only limitations upon the Federal government and its officers in actions for violations of Federal statutes when tried in the Federal courts. In criminal prosecutions in the State courts the acts of Federal officers stand upon the same footing as the acts of private individuals. In permitting the use of evidence obtained through unlawful search and seizure by Federal officers, the State is not taking advantage of a wrong done by its own officers, for Federal officers are not part of the State machinery.

7. ———: Federal and State Courts: Distinctions. The restrictions of the Fourth and Fifth amendments of the U. S. Constitution apply only to Federal officers; and the like restrictions of the Missouri Constitution apply only to State officers. If a State officer is called as a witness in a Federal court and asked to give evidence discovered by him in an unreasonable search, the provisions of the Federal Constitution cannot be invoked against his testifying, because its restrictions do not apply to him; and if a Federal officer is produced in a State court and asked to testify to some facts which he discovered by an unreasonable search, the provisions of the State Constitution cannot be invoked against his testimony, because its restrictions do not apply to Federal agents or officers; but if a Federal officer is produced as a witness in a State court and asked to testify to facts discovered by him in an unreasonable and unlawful search, the provisions of the Federal Constitution may be invoked against his testimony and everything he discovered by the unlawful search may be excluded, for its restrictions do apply to him. The unlawful act of the Federal officer does not become lawful when brought in question in a State court. The act of the Federal officer becomes unlawful because of its quality, and not because of the court in which he testifies; and if his evidence obtained by a search which is violative of the Fourth and Fifth amendments to the U. S. Constitution would be held incompetent in the Federal court it should likewise be held incompetent when offered in a State court. (DAVID E. BLAIR, J., dissenting.)

8. **ROBBERY:** Record in Civil Case. It is not error, in the trial of
   defendant for the crime of robbery, to refuse his offer of the
   record of the circuit court showing that the bank, from whose
   messenger the money was taken by violence, had sued the defend-
   ant and the other robbers for the amount of money taken by them.
   The record in the civil suit would not tend to show animus, motive
   or interest.

Citations to Headnotes: 1, Robbery, 34 Cyc. 1808; 2, Arrest, 5 C. J.
par. 74, and Criminal Law, 16 C. J. par. 1098; 3, Criminal Law, 16 C. J.
par. 1098, 1110 (1926 Anno); 4, Courts, 15 C. J. par. 285; 5, Criminal
Law, 16 C. J. par. 1110, and Searches and Seizures, 35 Cyc. 1267; 6,
Criminal Law, 16 C. J. par. 1110 (1926 Anno), and Searches and Seizures,
35 Cyc. 1271; 7, Searches and Seizures, 35 Cyc. 1269, 1270; 8, Robbery,
1807.

Appeal from Jackson Circuit Court.—*Hon. E. E.
Porterfield,* Judge.

REVERSED AND REMANDED.

*Clarence Wofford and Bert S. Kimbrell* for appel-
lant.

(1)   The court erred in overruling the motion, filed
by defendant and heard by the court before the trial,
to suppress the evidence and written or printed nota-
tions of the contents of the safe deposit box of the de-
fendant, and in admitting upon the trial of the cause
evidence as to the contents of said safe-deposit box,
for the reason that said safe-deposit box was entered
and evidence of its contents obtained by and in con-
sequence of a violation of the rights of the defendant
under Sections 11 and 23 of Article 2 of the Constitution
of Missouri and the fourth and fifth amendments of the
Constitution of the United States.   (a)   The pretended
affidavit, upon which the pretended search warrant was
issued, was void, in that it did not describe or attempt
to describe any article or property to be searched for
or seized, did not state facts sufficient to show the
commission or attempted commission of a crime and
did not state facts sufficient to show the existence of
probable cause, but merely stated that affiant believed

and had reason to believe that a fraud had been committed or was about to be committed upon the revenue of the United States. Secs. 4115, 4129, R. S. 1919; Giles v. United States, 284 Fed. 208; Queck v. Hawker, 282 Fed. 942; Woods v. United States, 279 Fed. 710; United States v. Ray and Schultz, 275 Fed. 1004; United States v. Rykouski, 267 Fed. 866; Veeder v. United States, 252 Fed. 414; Ripper v. United States, 178 Fed. 24; Honeycutt v. United States, 277 Fed. 939; White v. Wagar, 185 Ill. 195; Early v. People, 117 Ill. App. 608; State v. Leach, 38 Me. 432; State v. Whalen, 85 Me. 469; Hussey v. Davis, 58 N. H. 317; State v. Spirituous Liquors, 68 N. H. 47; People v. Kinney, 185 N. Y. Supp. 645; Byrnside v. Burdett, 15 W. Va. 716; State v. Peterson, 13 A. L. R. 1284. (b) The paper, or pretended search warrant, under the pretended authority of which the box was entered and the evidence obtained was void, in that it did not describe or attempt to describe any article or property to be searched for or seized, did not state facts sufficient to show the commission or attempted commission of a crime and did not state facts sufficient to show the existence of probable cause, but merely stated that affiant believed and had reason to believe that a fraud had been committed or was about to be committed upon the revenue of the United States by the use of said box. Sec. 11, Art. 2, Mo. Constitution; Secs. 4116, 4130, R. S. 1919; 35 Cyc. 1267; Bishop's New Criminal Procedure (4 Ed.) pp. 146, 147; State v. Slamon, 73 Vt. 212. (c) The search warrant being void, the entrance into the box was without warrant or authority, the search was unreasonable, and therefore unconstitutional, and the court erred in receiving evidence obtained in violation of the defendant's constitutional rights, and in overruling defendant's motion to suppress. Gouled v. United States, 255 U. S. 298, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 65 L. Ed. 654; Weeks v. United States, 232 U. S. 383, L. R. A. 1915B,

834; Boyd v. United States, 116 U. S. 616, 29 L. Ed. 746; People v. Marxhausen, 204 Mich. 559; Cooley's Constitutional Limitations (7 Ed.) pp. 431, 432, 433. (2) The court erred in excluding testimony offered upon the part of the defendant to show by the records of the circuit court that the Live Stock State Bank, of which the witness for the State, Seaton, was vice-president, had sued the defendant for the sum of $9500, and that this suit was pending at the time of the trial of the defendant on this charge. Evidence tending to show animus, motive, interest, etc., is always competent.

*Jesse W. Barrett,* Attorney-General, and *Allen May,* Special Assistant Attorney-General, for respondent.

(1) The evidence is sufficient to make a case for the jury. State v. Affronti, 292 Mo. 53; State v. Lasson, 292 Mo. 155. (2) The court erred in overruling defendant's motion to suppress evidence and in admitting such evidence upon the trial. (a) The search warrant under which the evidence was obtained was illegal and invalid under the Federal authorities. Woods v. United States, 279 Fed. 706; Giles v. United States, 284 Fed. 208; Veeder v. United States, 252 Fed. 414; Ripper v. United States, 178 Fed. 24. (b) It was likewise void, if tested by the State law. State v. Lock, 302 Mo. 400. Evidence obtained by illegal search and seizure by Government officers with the intention of securing evidence to convict the accused, will be suppressed upon timely motion before the trial, and failure to suppress such evidence constitutes reversible error. State v. Owens, 302 Mo. 348; State v. Lock, 302 Mo. 400; Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834; Gouled v. United States, 255 U. S. 298, 65 L. Ed. 647. (d) The Government may not by indirection do what it could not do directly. It cannot repudiate the illegal seizure and yet avail itself of the knowledge so obtained. Silverthorne Lumber Co. v. United States, 251 U. S. 385, 64 L. Ed. 319.

WHITE, J.—Appellant, in the Circuit Court of Jackson County, was found guilty of robbery in the first degree, and his punishment assessed at ten years imprisonment in the State Penitentiary. He was charged jointly with Ernest Hodges, but obtained a severance. He asserts here that a case against him was not made out, and therefore it is necessary to review the evidence.

The robbery was alleged to have been committed October 13, 1922, between eleven and twelve o'clock in the forenoon. On that morning one Thomas Crump, messenger for the Livestock State Bank, was carrying $9500 to his bank from the Continental National Bank in Kansas City. About 11:35 A. M. he boarded a street car at 12th and Main streets, and took a seat near the rear end of the car. Suddenly he was hit on the head and a gun placed at his stomach by a man who took the money out of his pockets and backed to the front door of the car and, with another man, got off at the front end of the car. The two men ran to an automobile which was about one hundred and fifty feet from the street car, and escaped.

On October 21, 1922, the defendant was arrested, taken to the police station and searched. The key to a safe-deposit box in the New England Safe Deposit Vaults Company, and a receipt for rent of same, were found on his person. Crump identified the defendant at the jail after the latter's arrest, but later was not very positive of his identification. Four other witnesses of the robbery also identified the defendant as one of those who perpetrated it. Lloyd Brashear, a window washer, was on the car. He testified he had a good view of Crump and of the man who robbed him. He identified the defendant and the other robber after their arrest. Eugene V. Connant was on the street at the time and saw the two men running from the street car, a distance of thirty or forty feet; he later saw both in the county jail and identified them; the defendant was one of them. Griffith H. Connell, conductor of the street car on which

the robbery occurred, testified that he was standing within a few feet of Crump at the time. He distinctly saw the man who took the money, and in the court room positively identified the appellant as the robber. One W. C. Hoffman was on the street car at the time of the robbery. He saw the robber take the money away from the messenger; he also identified Rebasti in the court room, as the robber.

The Assistant Federal Reserve agent at Kansas City testified to the printing and engraving and the sending out of Federal Reserve notes; he testified that on the sixth of October, seven days before the robbery, he delivered to the Federal Reserve Bank of Kansas City, two hundred five-dollar notes, giving the numbers. The paying teller of the Federal Reserve Bank testified that on the morning of the 13th he delivered to the messenger of the Continental National Bank a quantity of money, including $12,000 in five-dollar bills.

William R. Ricketts, manager of the New England Safe Deposit Vaults Company, testified that Charles Rebasti rented Deposit Box No. 1832, in his institution. Rickett was present afterwards when by virtue of a search warrant the box was opened.

Guy O. Seaton, vice-president of the Livestock State Bank, where Crump was employed as messenger, testified that he was in the New England Safe Deposit Vault when Charles Rebasti's box was opened, and among other things it included one hundred and ninety-seven five-dollar bills, bearing numbers included in the five-dollar bills mentioned by the Assistant Federal Reserve agent as having been delivered by the Federal Reserve agent on the sixth at the Federal Reserve Bank.

All this evidence relating to the contents of the safe-deposit box and the renting of it, was objected to and exceptions saved.

Before the trial defendant filed a motion to suppress the evidence alleging that when arrested he was carrying a key to a safe deposit box, and that a receipt for the rental of the box was taken from his person, in

violation of his rights under Sections 11 and 23, Article II, of the Constitution of Missouri, and in violation of the defendant's rights under the Fourth and Fifth amendments to the Constitution of the United States. That afterwards his safe-deposit box was broken into without warrant or authority of law, in violation of the said sections of the Constitution of Missouri and of the United States, and certain memoranda, written and printed, of the contents thereof taken by the State for the purpose of using the same against the defendant. The motion prayed that all such evidence be suppressed and the memoranda delivered to the defendant or destroyed. The court took evidence on the motion.

William Doran, a police detective, testified that he arrested the defendant October 21st, and took him to the station where the key to the safe-deposit box and receipt for the rent of it were taken from him. Doran afterwards called up Mr. Gregory, a Federal narcotic agent, who caused a search warrant to be issued by George D. Beardsley, United States Commissioner, directing Gregory, in the name of the President of the United States, to search the safe-deposit vaults of the New England Company. Gregory, in company with Mr. Greeson, also a narcotic agent, accompanied by Mr. Seaton, vice-president of the Livestock State Bank, and Mr. Doran presented themselves at the New England Company, armed with the search warrant issued to Mr. Gregory, and demanded the right to search the box of the defendant. The Vaults Company delayed the matter until its attorney could arrive and then the search was made and the contents of the box noted in the memoranda preserved. Mr. Seaton gave the numbers of the five-dollar bills found there, which he afterwards testified to at the trial. The court on hearing this evidence overruled the motion and error is assigned to that ruling on several grounds.

I. Appellant claims that a case was not proven against him and earnestly urges that he be discharged

**Sufficient Evidence.** in this court  From the above brief statement of the facts it is clear that the evidence, aside from that obtained by the search of defendant's deposit box, was entirely sufficient to sustain a verdict of guilty.

II.  No complaint is made as to the manner of the defendant's arrest; he was lawfully arrested.  Being lawfully arrested, the officers had a right to search him and his possessions in the room where he **Search After Lawful Arrest.** was arrested and take from him any article which might be used in securing his conviction.  [State v. Owens, 302 Mo. 348; Holker v. Hennessey, 141 Mo. 527, 1. c. 539; State v. Laundy, 204 Pac. 1. c. 975-976; People v. Cona, 180 Mich. 1. c. 650; People v. Kalnin, 189 N. Y. Supp. 359; Territory v. Hoo Koon, 22 H. I. 1. c. 602; State v. Fuller, 8 L. R. A. (N. S.) 762.]  The officers had a right to use the information they acquired in making that search in any way which would lead to the conviction of the defendant.

III.  Using the information obtained in searching the defendant the state officers, under Sections 4116 and 4130, Revised Statutes 1919, of Missouri, could have caused a search warrant to be issued under state authority, and could have searched the safety deposit box. **Search by Federal Officer.** They had complete information, so that a search warrant could have met every requirement.  The officers knew, or had reason to know, what was in the safe-deposit box.  Instead of that, the state officers turned the matter over to Federal narcotic agents.  Mr. Gregory opened the box and made the search by virtue of the warrant issued by the United States Commissioner Beardsley, and while Mr. Doran was present he did not conduct the examination nor participate in it.  It was solely under the authority of the Federal agents; therefore it was not in contravention of Sections 11 and 23 of the State Constitution, which protects against unreasonable search only on the part of state officers and state agents.

[Weeks v. United States, 232 U. S. 383; McGrew v. United States, 281 Fed. 809; Gouled v. United States, 255 U. S. 298; State v. Owens, 302 Mo. 348.]

The fact that Doran gave information to the Federal officers would not affect this question. The Federal officers had a right to proceed to make the search for any violation of the Federal law, and with a valid search warrant could have obtained such information when desired. Doran did not control the Federal agents, and had no authority whatever in the conduct of the investigation. He had a right to give them the information as to the ownership of the safe-deposit box; the use they made of it afterwards didn't affect his duties nor affect the right of the State to avail itself of the information it might obtain in that way. So far as the State Constitution is concerned the motion to suppress was properly overruled.

IV. A different question is presented when we consider the claim that the production of the evidence obtained was in violation of the defendant's rights under the Federal Constitution. State courts are as much under obligation to protect the rights Illegal of defendant guaranteed him by the United Federal States Constitution as those guaranteed him Warrant. by the Constitution of this State, and the Federal Supreme Court may review the action of this court in consideration of this question. We are bound to follow the rulings of the Federal court in respect to this particular matter.

The search warrant is conceded by the State to be insufficient and void. The affidavit is not set out in the record, but the search warrant is. It briefly states that complaint on affidavit was made before the United States Commissioner by Bert S. Gregory, U. S. Internal Revenue officer, that he has reason to believe that fraud is being committed upon the revenue laws of the United States by the use of the Safety Iron Deposit Box 1832, etc., describing the place, "said safety-deposit box being

now rented, used and controlled by Charles Rebasti for the unlawful sale and concealment of narcotic drugs," etc. There is no allegation that any narcotic drugs of any kind are in the safety-deposit box, nor of any other fact which would justify a search. The search was illegal and void. [Woods v. United States, 279 Fed. 706; Giles v. United States, 284 Fed. 1. c. 214; Veeder v. United States, 252 Fed. 1. c. 419; State v. Lock, 302 Mo. 400.] The search being in violation of the Fourth Amendment to the Federal Constitution, the evidence obtained by means of the search was incompetent because of a timely motion to suppress. The motion should have been sustained. [Weeks v. United States, 232 U. S. 383; Gouled v. United States, 255 U. S. 298.]

It is contended that because this case arises in the State court, and not in a Federal court, this court cannot take notice of the restriction of the Fourth and Fifth amendments to the Federal Constitution.

It is unthinkable that a State court is powerless to protect the constitutional rights of its citizens, guaranteed by the Federal Constitution. To hold the evidence of the Federal agents admissible in this case is to pronounce that doctrine. It is to say that the act of an officer, or of any other individual, is lawful or unlawful, not on account of the character of the act, but on account of the court in which it is called in question.

The restriction of the Fourth and Fifth amendments to the Federal Constitution apply only to Federal officers. The like restrictions in the State Constitution apply only to State officers. When a case arises in a Federal court and a State officer, as a witness, is asked to give evidence discovered by him in an unreasonable search, and the provisions of the *Federal* Constitution are invoked in objection to his testimony, the court always holds that he may testify because the restrictions of the Federal Constitution do not apply to him.

Likewise, in a State court, when a Federal official is offered as a witness and is asked to testify to some

facts which he discovered by an unreasonable search, and the State Constitution is cited in objection, his evidence is held competent because the restrictions of the State Constitution do not apply to him. But when a Federal officer is offered as a witness in a State court, and his evidence is objected to because discovered in violation of the Federal Constitution, no case is cited where it is held admissible.

Such constitutional restrictions of Federal officers and State officers always apply wherever they are called in question.

Suppose a Federal officer should make an unreasonable search, and in doing so outrage the citizen's rights under the United States Constitution. Can it be said that the unlawful act of the officer could become lawful because of the court in which it is questioned? Suppose the injured citizen should sue him in the State court for damage done in violation of his constitutional rights, and the officer in defense should plead that, although he acted unlawfully, the plaintiff had no right to prove it in a State court. Does anyone suppose the plea would be good?

In this case the Federal officer violated the constitutional rights of the defendant, and violated the constitutional restrictions upon his own behavior as a Federal officer. Had the case been pending in the Federal court he could not have testified, because his act in procuring his information was *unlawful*. His case, however, is pending in the State court and it is contended that he may testify because his act was *lawful*. By that theory his act becomes lawful or unlawful, not because of its quality, but because of the court which decides the question. He can bring his misdemeanor to a State court and there have his lawless disregard of his official duty appraised as a meritorious performance.

Numerous cases are cited in support of the opposite view, where it is said that the amendments to the Federal Constitution are intended to limit the powers of the *national government* alone and do not affect the

powers of the *state governments*. This is construed by
the prosecution to mean that the restrictions of the
national government do not affect State courts. But
the cases cited do not so hold. Where the opinions in
such cases hold that the Fourth and Fifth amendments
to the Federal Constitution operate upon the Federal
government only and not upon the State government,
they mean, of course, the agents of the Federal govern-
ment. If those amendments are intended to restrain
the actions of Federal officers, why should it ever be
held that under certain conditions they do not restrain
them?

The case of People v. Adams, 176 N. Y. l. c 356, 68
N. E. 636, is cited, where it is said that the Fourth and
Fifth amendments to the Constitution of the United
States do not apply *to actions in the state courts.* That
statement is purely *obiter.* The facts in the case do not
warrant any such statement of the law. In no case has
it ever been held, so far as I can discover, that the un-
lawful act of a Federal officer becomes lawful when
brought into question in a State court, or that the
evidence of a Federal official, which would be held in-
competent in the Federal court on account of the restric-
tions of the Fourth and Fifth amendments, becomes
competent when offered in a State court.

Consider the consequences that would flow from
holding that a Federal officer may testify in a State
court to a fact discovered by an unlawful search in viola-
tion of the Federal Constitution. Suppose a State
Sheriff and a Federal marshal should act together.
They could go anywhere, search any premises or any
person, without a warrant, without authority, in entire
disregard of constitutional restrictions upon each.
Cases come up in the Federal court and in the State
court in which they are called upon to testify to facts
discovered in their unlawful depredations. If the
evidence in this case is admissible, then the Federal
officers could testify in the State courts to what they

would not be allowed to say in the Federal court, and the State officers could testify in the Federal court to what they would not be allowed to say in the State court. Thus they would make out a case in each court in utter defiance of constitutional restrictions on each of them.

The only safe and sound construction of the situation is to say that when a Federal officer violates the constitutional restriction upon his conduct so as to make evidence procured in such violation incompetent, that it is incompetent everywhere offered.

V. It is claimed by the defendant that the court committed error in excluding the records of the Circuit Court of Jackson County, showing that the Livestock State Bank had sued this defendant by a civil suit to recover $9500, claiming it had been taken from the messenger at the time of the robbery. The suit is against Charles Rebasti, Ernest Hodges, and Edgar Holmes. The point urged is that the evidence of that suit would tend to show animus, motive and interest. We are unable to see how it would add anything to the evidence introduced. The plaintiff, Livestock State Bank, proved it had been robbed of $9500. The evidence offered would add nothing to the necessary interest shown by the fact. In effect the evidence would tend to show that the bank had a chance to get its money back and might thereby soften the attitude of the jury towards the defendant. Only two officers of the bank testified—Crump in regard to the robbery, and Seaton as to his presence when the deposit box was opened. We hardly understand how this evidence would affect the credibility of those witnesses who testified to facts undisputed. As shown above, Mr. Seaton's evidence was incompetent for other reasons, and Crump's testimony as to the facts was not questioned in any way.

**Record in Civil Case.**

The judgment is reversed and the cause remanded. *Graves, C. J., James T. Blair, Ragland* and *Woodson, JJ.,* concur; *Walker, J.,* absent; *David E. Blair, J.,* dissents in separate opinion.

DAVID E. BLAIR, J. (dissenting).—The opinion of Judge WHITE reverses the judgment and remands the case solely upon the ground that error was committed in the admission of the testimony of Federal officers who secured access to the safety-deposit box of defendant by means of an illegal search warrant. I am unable to concur in this part of the opinion. I agree that the motion to suppress the testimony was properly overruled, in so far as the Missouri Constitution was invoked.

The real question in the case, concretely stated, is: Does the fact that an unlawful seizure and search were made by Federal officers render the evidence procured thereby inadmissible upon the trial of the case in the State court, when such evidence, after timely and proper motion to suppress, could not have been used in the Federal court? The majority opinion so holds. To this proposition I dissent.

In Twining v. New Jersey, 211 U. S 1. c. 93, Mr. Justice MOODY said: "It is not argued that the defendants are protected by that part of the Fifth Amendment which provides that 'no person . . . shall be compelled in any criminal case to be a witness against himself,' for it is recognized by counsel that by a long line of decisions the first ten amendments are not operative on the states. [Barron v. Baltimore, 7 Pet. 243; Spies v. Illinois, 123 U. S. 131; Brown v. New Jersey, 175 U. S. 172; Barrington v. Missouri, 205 U. S. 483.]"

In Barron v. Baltimore, supra, speaking of the Fifth Amendment to the Federal Constitution, Mr. Chief Justice MARSHALL said:

"The Constitution was ordained and established by the people of the United States for themselves, for their own government, and not for the government of the individual states. Each state established a constitution for itself, and, in that constitution, provided such limitations and restrictions on the powers of its particular government as its judgment dictated. The people of the United States framed such a government for the United States as they supposed best adapted to their

situation, and best calculated to promote their interests. The powers they conferred on this government were to be exercised by itself; and the limitations on power, if expressed in general terms, are naturally, and, we think, necessarily, applicable to the government created by the instrument. They are limitations of power granted in the instrument itself; not of distinct governments, framed by different persons and for different purposes.

"If these propositions be correct, the Fifth Amendment must be understood as restraining the power of the general government, not as applicable to the states. In their several constitutions they have imposed such restrictions on their respective governments as their own wisdom suggested; such as they deemed most proper for themselves. It is a subject on which they judge exclusively, and with which others interfere no farther than they are supposed to have a common interest."

In Spies v. Illinois, supra, Mr. Chief Justice WAITE said: "That the first ten Articles of Amendment were not intended to limit the powers of the state governments in respect to their own people, but to operate on the National Government alone, was decided more than a half century ago, and that decision has been steadily adhered to since."

In Brown v. New Jersey, supra, Mr. Justice BREWER said: "The first ten amendments to the Federal Constitution contain no restrictions on the powers of the State, but were intended to operate solely on Federal Government."

In Barrington v. Missouri, supra, it was held that the question of defendant being compelled to become a witness against himself in violation of the Fifth Amendment to the Federal Constitution was not properly saved for consideration by the United States Supreme Court. But, in passing, Mr. Chief Justice FULLER said: "Moreover, Article V of the amendments, alone relied on, does not operate as a 'restriction of the powers of the State, but was intended to operate solely upon the Federal Government.' [Brown v. New Jersey, 175 U. S. 172.]

And if, as decided, the admission of this testimony did not violate the rights of the plaintiff in error under the Constitution and laws of the State of Missouri, the record affords no basis for holding that he was not awarded due process of law. [Howard v. Fleming, 191 U. S. 126.]"

In Weeks v. United States, 232 U S. 383, it is said at page 398: "As to the papers and properties seized by the policemen, it does not appear that they acted under any claim of Federal authority, such as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the Federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials. *Its limitations reach the Federal Government and its agencies.* [Boyd Case, 116 U. S., supra, and see Twining v. New Jersey, 211 U. S. 78.]" (Italics my own).

In Burdeau v. McDowell, 256 U. S. 465, Mr. Justice DAY said: "The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued."

In Kanellos v. United States, 282 Fed. 461 (C. C. A. 4th Circuit), WOODS, Circuit Judge, said: "In Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, it was again held that the security afforded by the Fourth Amendment applies solely to action taken under Federal authority or by Federal

officers; and where papers are unlawfully taken by individuals unconnected with the Federal government, and afterwards come into the possession of Federal officers, they may be used·as evidence against the person from whom they were taken."

That the Fourth and Fifth Amendments of the Federal Constitution may not be successfully invoked in criminal prosecutions in the State courts has been clearly decided in several reported State cases, which my brief examination has disclosed.

In People v. Adams, 176 N. Y. 1. c. 356, BARTLETT, J., said: "The first point made by the learned counsel for the appellant is that by reason of the seizure of defendant's papers, as in the manner described, the defendant's constitutional right to be secure in his person, papers and effects against unreasonable searches and seizures, was violated, and he was also thereby compelled to be a witness against himself, in contravention of the Fourth, Fifth and Fourteenth articles of the amendments to the Constitution of the United States, and Article 1, Section 6, of the Constitution of the State of New York, and Section 11 of the Bill of Rights of this State. *Articles Four and Five of the amendments to the Constitution of the United States do not apply to actions in the State courts.*" (Italics my own).

In State v. Magnano, 97. Conn. 543, the defendant claimed that the seizure of his property and the admission of evidence procured by such seizure violated certain sections of the Connecticut Constitution and the Fourth and Fifth Amendments of the Federal Constitution. BURPEE, J., said: "The Constitution of the United States and its amendments, and the cases concerning them which have been decided by the United States Supreme Court, and which the accused has relied on in his contention and brief, apply only to Federal officers and Federal courts. [Weeks v. United States, 232 U. S. 383, 398, 34 Sup. Ct. 341, L. R. A. 1915B, 834, note; 12 Corpus Juris, 744; 13 A. L. R. 1159, 1168, note.]"

In City of Sioux Falls v. Walser, 187 N. W. (S. D.) 821, WHITING, J., said: "It seems to be the contention of appellant that the holdings of the Federal court declaring the effect of the Fourth and Fifth Amendments to the Federal Constitution (being in effect the same as Sections 9 and 11, supra) are controlling upon this court. That said Amendments 4 and 5 do not govern the several states and the courts thereof is the settled law of this country."

In Kennemer v. State, 154 Ga. 139, HINES, J., said: "The provisions against unreasonable searches and seizures are identical in the constitutions of the United States and of this State. [Civil Code, secs. 6372, 6687.] The provision in the Federal Constitution applies to, and is restrictive only of, national action. In the sphere of its action the construction put upon it by the Supreme Court of the United States is controlling and supreme; but 'it does not in any manner govern or regulate trials in criminal cases in State courts.' The provision in the State Constitution is applicable alone to State action. Its construction by this court is controlling and supreme."

From the foregoing, I think it is quite clear that the contention that defendant's rights under the Fourth and Fifth amendments to the Federal Constitution, which were said to have been violated by Federal officers, cannot avail him in a prosecution in this State for a violation of the laws of this State. Said sections are only limitations upon the Federal government and its officers in actions for violations of Federal statutes when tried in courts of the Federal government. In a criminal prosecution in the courts of this State, the acts of Federal officers stand upon the same footing as acts of private individuals. Such officers are not part of the state machinery. In permitting the use of evidence obtained through unlawful search and seizure by such Federal officers, the State is in no sense taking advantage of a wrong perpetrated by its own officers. The denial of the right to take advantage of such wrongs at the

hands of its own officers is apparently the basis for the rulings recently made by this court and in others, as well as in the Federal courts, that evidence so obtained may not be used, when objection thereto has been timely and appropriately made.

I respectfully dissent from the opinion of Judge WHITE, in so far as it reverses and remands the judgment upon the ground herein discussed.