# CRIMINAL COURT OF BALTIMORE CITY.

Filed July 22, 1926.

STATE OF MARYLAND
VS.
OTHO YOUNG, ET AL.

*Herman M. Moser*, Assistant State's Attorney, for State.

*Wm. Curran* and *Horton S. Smith* attorneys for defendants.

O'DUNNE, J.—

Defendants were indicted for crime commonly known as "bookmaking," or placing bets on races, etc., with the usual counts in the printed form of indictment.

Before the case came on for trial, defendant Young, through his counsel, filed a petition on July 9th, under oath, setting forth in substance (1) that he is a citizen of the United States and of the State of Maryland, residing at 562 Presstman street, in the City of Baltimore; that the whole of said house is his home, where he has resided for a long period to April 3, 1926; (2) that on said day, certain unknown police officers, acting under instruction of a police inspector, forcibly and without warrant, broke into and entered his said home, and forcibly, and without warrant, unlawfully and against his will, seized from amongst his private personal effects, certain books, letters and papers and other paper writings, then and there his private property; (3) that the said police officers, Chief Inspector of Police and the State's Attorney of Baltimore City, took the said property so seized, into their possession and have failed and refused the return thereof; and he claims the State's Attorney proposes to use the said papers so seized, in the trial of the said bookmaking case (the indictment above), and he prays the return of the said private papers as seized in violation of his legal rights under Art. 22 and 26, of the Maryland Bill of Rights, and under the 4th and 5th Amendments of the U. S. Constitution.

The facts set forth in the defendants' petition are, for the purpose of this decision, admitted by the State's demurrer to the petition.

There is thus raised here one of the most delicate questions of law, on which there is a wide diversity of legal opinion in the adjudicated cases of the several States, and of the Supreme Court of the United States. It is at the same time, under modern conditions, a question of paramount importance to the people of this city and State.

The question is not new. It is as old as the early common law of England. Its present aspect assumes an additional importance since the 18th Amendment and the passage of the Volstead Act. Conditions arise daily now

that were never dreamed of 20 years ago.

The State contends the Lawrence case in 103 Md., is decisive of the present case. If the question has been decided by the Court of Appeals, its decision would be binding on this Court. In my opinion, the question as here presented, has never been decided by our Court of Appeals. More than 20 years ago I argued on the State's behalf, the Lawrence case in 103 Md. 17, where a somewhat similar question arose, but it arose as an objection to the admissibility of the evidence in the *actual trial of the case.* It was a charge of conspiracy and false pretense.

The defendant Lawrence had been arrested at the Rennert Hotel by Captain Pumphrey, then chief of detectives, and after being taken to headquarters, they sent back to the hotel and got a satchel belonging to him, in which were found what purported to be certificates of deposit of Chicago Loan and Trust Co., Wyoming coal bonds and some 16,000 shares Colorado Gold Temple Mining Co. This was the stock which was the subject matter of the false pretense and conspiracy. It was contended that some of these were in his satchel and some taken from his person when arrested (p. 31). In the actual trial of the case before a jury, the objection was made to the then admissibility of the evidence (on the same theory, presumably, as contended for here), that it violated the 22nd and 26th Art. of the Bill of Rights, and the 4th and 5th Amendments. While the case was reversed on other grounds, the admissibility of this evidence was sustained. The Boyd case in 116 U. S. 616, and the Adams case, 192 U. S. 585, were at that time the most recent pronouncements of the Supreme Court of the United States, and they were reviewed by Judge Jones, who delivered the opinion. The Court in passing said:

"We think they (the constitutional provisions) were never intended to have that effect, but are rather designated to protect against *compulsory testimony from a defendant against himself in a criminal trial,* and to *punish wrongful invasion* of the *home of the citizen or the unwarranted seizure of his papers* and *property,* and to render invalid legislation or judicial proceedings having such effect."

Important distinguishing differences in the instant case are these:

(1) The objection there rose in the midst of the trial before the jury, and the opinion announced a rule of *procedure* where the objection came for the first time in the *midst of the actual trial.*

(2) That the defendant in the Lawrence case took the stand in his own behalf and testified as to the matters embraced in the exception; and on p. 37, the Court said it was not necessary to pass on the question how far *such fact* might be held to be a *waiver* of *his privilege.*

The Lawrence case must be confined to the facts there decided, arising as they did in the midst of the trial. As a decision of an important constitutional question, it, like other cases of that character, must be viewed in connection with its historic settings, and must not be extended by implication to a wholly different set of facts with an entirely changed historic back ground. In this community 20 years ago, no one ever heard of a police officer breaking into a private dwelling house, without a warrant for arrest or without a search warrant, on the mere suspicion that telephone might be used for placing bets on races, or some slips of bets be found among a man's private papers, or some contraband liquor might be discovered in the cupboard of his bedroom. Twenty years ago, had an officer broken into a private dwelling in search of evidence on which to later accuse one of some misdemeanor or other violation of law, it would have created a riot. He would have been dismissed from the force, driven out of the city, or met a more tragic fate. Today, supine acquiescence in violation of constitutional rights, has made such invasion of the privacy of homes, a matter of weekly if not daily occurrence in this community. So far have private rights been invaded, and the authority of the law abused, that I considered it an evil sufficiently wide spread and of such public importance, that it was made the subject of a special paragraph in the charge to the present Grand Jury, in which I attempted to state a constitutional legal proposition in such way as to be easily grasped by the non-technically trained lay mind, as follows:

486

## "CONSTITUTIONAL GUARANTEES MUST BE RESPECTED.

"A wholesome respect for constitutional guarantees has been somewhat undermined by the seeming necessities of national defense in the World War. Liberty has been abridged under the plea of *'war necessity.'* We must get back to our ancient moorings. A MAN'S HOUSE IS STILL HIS CASTLE, according to the ancient doctrine of the Common Law. This law was founded on the wisdom and experience of society. It was adopted bodily by our Maryland forefathers. Guaranteed by them to us in our bill of rights. While the maintenance of law, in the protection of life and the more serious depredations on property, still justifies, in the search for known or suspected felons, the invasion of the home for their immediate apprehension, the indiscriminate *invasion* of the private home, *not in search of felons,* and *not armed with search warrant* to search suspected place, *is a violation of constitutional guarantees of personal liberty* and private property, one which cannot be sanctioned and should not be tolerated.

"If the alleged 'obscene' OVID can still be quoted as respectable legal authority, notwithstanding any loss of reputation sustained in this community by his recent prosecution by the mail division of the Federal Government, he says *'A cure is prepared too late when evils have grown old through long delay.'* A long continued acquiescence on the part of the public in an invasion on their constitutional rights, will operate as a denial, by common consent, of these constitutional safeguards.

"Arrests without warrant, for misdemeanors that are past, and not on immediate complaint involving breaches of the peace, are illegal arrests. These sometimes led to resistance of the officer of the law. This, in turn, causes free use of the espantoon. Then serious charges are preferred. Serious injuries sometimes result. Generally to the citizen, but at times to the officer engaged in illegal arrest. Prosecutions follow. Ill-feeling is engendered. Respect of law is diminished, and the general morale suffers.

"As evidence thus obtained, may not be available for prosecution, on seasonable demand made for its return and exclusion, the incentive to so obtain it *illegally* may be diminished by your refusal to act on evidence so obtained when there is no other evidence *than that so obtained.* Individual misdemeanants may thereby go scot free. The respect for law generally, promoted by the due observance of law, has a more beneficial effect on the community as a whole, than the conviction here and there of a minor offender. The strong arm of the State is always adequate to cope with crime. The machinery of government provided for the enforcement of law is amply efficient, without resorting to the inventions of illegal subterfuge, and without bold *defiance* of law, in the *enforcement* of law. The Police Department might well have a school of legal instruction as to its legal rights in making arrest." (Full charge printed Daily Record, May 13, 1926).

With the lapse of 20 years, we are confronted with new conditions; new laws and new decisions.

Then the Adams case in 192 U. S. was the latest pronouncement of the Supreme Court. Since that time this question has arisen and been passed on in the following cases:

U. S. vs. Weeks, 232 U. S. 383; Silverthorn Lumber Co., 251 U. S. 385; Gouled vs. U. S., 255 U. S. 298; Amos vs. U. S., 255 U. S. 313; Agnello vs. U. S. 269, U. S. 20, 33, and perhaps the latest expression, reviewing them all, in Henderson vs. U. S., C. C. A. (4th Circuit, Richmond). Opinion by Circuit Judge Parker of N. C., reported Daily Record, June 3, 1926.

In Agnello case, 269 U. S. 20, 33, the Court said:

"Save in certain cases, as an incident to arrest, there is no sanction in the decision of Courts, Federal or State, for the search of a private dwelling house without a warrant.

"Absence of any judicial approval is persuasive authority that it is unlawful."

* * * "Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no jurisdiction for search of that place without a warrant."

In Gouled vs. U. S., 255 U. S. 298, 303, the Court said:

"It has been repeatedly decided that these amendments should receive a liberal construction so as to prevent

stealthy encroachment upon, or 'gradual depreciation' of the rights secured by them by imperceptible practice of the Courts, or by well intentioned, but mistakenly overzealous executive officers."

That searches and seizures and forcible entries of homes without warrant for arrest, or search warrants, are illegal and a violation of the Fourth and Fifth Amendments of the U. S. Constitution, is now no longer an open question in *Federal procedure*.

The Fourth and Fifth Amendments to the U. S. Constitution, by an unbroken line of decisions from Barron vs. Baltimore, in 7 Peters 243, to the present time, have been declared by the Supreme Court to be limitations on the *Federal Government*, and are not violated, as such, by a search and seizure, however wrongful, which is not under Federal Government authority, real or assumed, or under color of such authority.

Whether the Fourteenth Amendment has extended the principles of the Fifth Amendment (against self incrimination) to the several States, may be contended as still an open question, undecided, which may well be left for a higher tribunal to pass upon.

The effect of these decisions (from Barron vs. Baltimore, 7 Pet. to Gouled vs. U. S., 255 U. S.) that the Fourth and Fifth Amendments, while binding on Federal officials, do not apply, as such, to *State* officers, has brought about an alarming condition in the country by which State officers and State police, feeling they are immune from any provisions of law in breaking into homes and making searches and seizures, do so on their own supposed irresponsibility and with a belief in personal immunity and take with them on such occasions Federal officers. These on finding what they believe to be illegal possession of liquor or narcotics, seize and apprehend the alleged offender and seize the alleged contraband commodities, and thus are personal liberty and the Constitutional protection of the privacy of home fast becoming but a legal fiction.

As it is a criminal offense under the Volstead Act for a Federal officer without a search warrant, to search a private dwelling house, query, may not such Federal officer, when combining with a State police officer, subject both to indictment for criminal conspiracy to violate a Federal statute by the use of "unlawful means" to an end? A few wholesome prosecutions under either State or Federal law, with convictions visited by drastic punishment for invasion of the most sacred rights of the privacy of home, might have a salutory effect on the over zealous and curb the abuse of the strong arm of the law.

Conceding that the Fifth Amendment, as such, is not binding on the States, it must be admitted that if it were, it would not now be an open question under the U. S. Supreme Court decisions that the private papers taken in this case in the manner set forth in the petition would be a violation of that amendment, and that the same could not be used in evidence against the defendant, and that he would be entitled to have them returned to him on his application for that purpose. If then, instead of the Fifth Amendment, there were a clause in the Maryland Constitution containing the same provision of the Fifth Amendment, would not the reasoning of the Supreme Court of the United States be at least persuasive of the interpretation which should be given such constitutional provision?

Art. 22 of the Maryland Bill of Rights contains such provision and reads:

"NO MAN OUGHT TO BE COMPELLED TO GIVE EVIDENCE AGAINST HIMSELF IN A CRIMINAL CASE."

The Fifth Amendment is:

"Nor shall be compelled in any criminal case to be a witness against himself." Identical in legal effect.

Art. 26, Maryland Bill of Rights reads:

"That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place or the person in special are illegal and ought not to be granted."

This is *in effect* the Fourth Amendment, which reads:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable search and

seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

If these amendments (and Maryland constitutional provisions) regulating with great particularity their prerequisites, necessarily presuppose that entry and seizure without any warrants, are *necessarily illegal*, because entry armed with a *general* warrant is illegal, how much more so then if without warrant at all. Why the necessity for particularity of warrant, if no warrant is necessary.

If a *State* officer may arrest at pleasure without warrant, or enter one's home without warrant, and force an entry if he sees fit, on his mere irresponsible statement that he *suspected* something wrong was going on in the premises, or that something illegal *might* be found there, then why may not an officious citizen do the same? Will it be answered that he may be sued for civil trespass? The more irresponsible his action, the more impecunious he is likely to be. Is the doctrine that a man's home is his castle but an ancient fiction?

"The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws," says the Supreme Court in Agnello case, supra.

"Safeguards similar to the Fourth Amendment are deemed necessary and have been provided in the constitutions of every State of the Union. We think there is no State statute authorizing the search of a house without a warrant," *id.*

To my mind the arguments of the Supreme Court of the United States, in the decisions since the Adams case was decided, notably the Weeks case in 232 U. S., Gouled case, 255 U. S., Agnello case, 269 U. S. 20, and the Henderson case, C. C. A. 4th Circuit, decided January 12, 1926, are conclusive of the question, as Federal question, on the Fourth and Fifth Amendment, and because Art. 22 and Art. 26, of the Maryland Bill of Rights, are in effect those same provisions, the decisions are of such persuasive authority, as to induce me to follow that line of reasoning, rather than the Courts of last resort of States which have not followed the reasoning of the Supreme Court. As stated, I view the question as not having been decided in Maryland, in the Lawrence case, in 103 Md. If, however, I could interpret the Lawrence case as decisive of this question, I would of course feel bound to follow it *implicitly*. But, as already stated, our Court followed the Supreme Court in the Adams case, 192 U. S., then lately decided. If the Supreme Court has not in effect overruled the Adams case, it has so far "distinguished" it as to impair its force for all practical purposes. Our Court of Appeals may well adhere to the Lawrence case, establishing as I think but a rule of procedure where the objection is made for the first time in the actual trial of the case, or may still further follow the Supreme Court if it should so see fit, "as expressed in the latest case, Agnello case, 269, to the effect that the essence of a provision forbidding the acquisition of evidence in a certain way, is that not merely evidence so acquired shall not be used before the Court, but that it shall not be used at all."

The question here presented, is certainly not the question decided in the Lawrence case. Nor has this question been passed on by our Court of Appeals.

The doctrine of the Weeks case in 132 U. S., affirmed in the later U. S. Supreme Court decisions has been adopted in the following decisions.

Fla. Atz vs. Andrews, 84 Fla. 43.

Ill. People vs. Castree, 311 Ill. 392; People vs. Elias, 316 Ill. 376.

Ind. Flum vs. State, 195 Ind. 585; Calender vs. State, 193 Ind. 91.

Ky. Youman vs. Comm., 189 Ky. 152; Comm. vs. Feiner, 196 Ky. 840.

Michigan. People vs. Marxhausen. 204 Mich. 559; People vs. Margelis, 217 Mich. 423.

Miss. Tucker vs. State, 128 Miss. 211; Orick vs. State, Miss., 105 So. 465.

Mo. State vs. Owens, 302 Mo. 348; State vs. Rebasti, 306 Mo. 336.

Montana. State, ex rel. Samlin, vs. Dis. Court, 59 Mont. 600; State, ex rel. King, vs. Dis. Court, 70 Mont. 191.

Oklahoma. Gore vs. State, 218 Pac. 545; Kinney vs. State, 15 Okla. Cr. 653.

Tenn. Hughes vs. State, 145 Tenn. 544; Goodwin vs. State, 148 Tenn. 682.

Washington. State vs. Gibbons, 118 Wash. 171; State vs. Basil, 126 Wash. 155.

West Va. State vs. Wills, 91 W. Va. 659; State vs. Massie, 95 W. Va. 233.

Wis. Hoyer vs. State, 180 Wis. 407; Novak vs. State, 185 Wis. 616.

Wyoming. State vs. Peterson, 27 Wyoming 185; Wiggins vs. State, 28 Wyo. 480.

The moral effect of destroying the evidencial value of private papers, illegally seized by high-handed and unwarranted raids of private dwelling houses, is to destroy the *incentive* for such invasion of the home by police officers in search of evidence, without warrant either to arrest an offender, or to search a suspected premises. If Court approval is placed on acts of officers so acting, officious private citizens are immune by the same token. No one, except one clothed with a legal warrant, *expressly regulating his action*, should be, or is privileged to invade the sanctity of the home.

For the reasons stated, I will grant the relief prayed and order the private papers and property so seized without warrant, returned.